PIONEER MINING CO. et al. v. MITCHELL.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1911.)

No. 1,965.

1. MINES AND MINERALS (§ 51*)—PLEADING—NATURE OF ACTION.

Under Carter's Ann. Code Civ. Proc. Alaska, § 1, which abolishes forms of action, a complaint alleging that defendants, by their lessees of an adjoining claim, entered upon plaintiff's mining claim and extracted gold therefrom, which they converted to their own use, defendants receiving a share of the same as royalty, states a cause of action in the nature of trover, which entitles plaintiff to recover as damages the value of such royalty.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 51.*]

2. MINES AND MINERALS (§ 71*)—RECOVERY FOR CONVERSION OF MINERALS—JOINT LIABILITY.

Where defendants, who were owners in common of a mining claim, which was leased, with notice that their lessees were taking gold from plaintiff's claim adjoining, received royalties therefrom, they were jointly liable to plaintiff therefor.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 198, 199; Dec. Dig. § 71.*]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Action at law by Charles Mitchell against the Pioneer Mining Company and A. H. Dunham. Judgment for plaintiff, and defendants bring error. Affirmed.

This is an action to recover for certain gold extracted from a mine of which defendant in error below, claims to be the owner. The complaint sets forth that plaintiff is, and was during the times mentioned therein, the owner of a certain mining claim, known as "No. 1 Flat Creek," particularly describing the same; that in June, 1909, defendants wrongfully, unlawfully, and willfully entered upon the southerly portion of said claim, and thereafter, during the months of July and August, 1909, they and their agents and lessees wrongfully, knowingly and willfully, and against plaintiff's consent, mined the said claim, and extracted gold from the gold-bearing gravel thereon, to the amount and value of $5,606.88, and appropriated and converted the same to their own use; that defendants, with full knowledge of plaintiff's

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rights therein, continued to mine said premises, against plaintiff's will, and actually received as royalty from the mining operations of their agents and lessees gold in amount and value of $991.91; and that, by reason of the premises, plaintiff has suffered damages in the sum of $5,606.88. The prayer is for judgment in that amount.

The answers of defendants (they answering separately) show that defendants are the owners of a mining claim known as the "Gold Belt Fraction," which adjoins and overlaps the No. 1 Flat Creek claim; that on August 10, 1908, the then owners of the Gold Belt Fraction, namely, C. A. Banghart and A. H. Dunham, leased the same to O. A. Margraf and J. A. McFarlane for a term of two years, and thereafter, on the 14th day of June, 1909, the defendant Pioneer Mining Company purchased an undivided three-fourths interest in said claim from Banghart and one J. K. Sewell; that prior thereto the lessees assigned and transferred the lease, by mesne assignments, to C. H. Marsh, George Marsh, G. H. Marsh, and Harry Ashland; that such assignees, about the time stated in the complaint, entered upon and mined the Gold Belt Fraction, and in doing so, in good faith and believing that they had a right so to do, but without the knowledge, instance, or authority of the defendants, entered upon and mined in part the overlap; that the Pioneer Mining Company received from said lessees as royalties $619.95, and Dunham $206.65; that as to what proportion of the gold dust mined by said lessees came from the claim of plaintiff defendants do not know, and therefore deny that they received any royalties or gold dust from said claim, and deny that plaintiff is damaged in any sum whatever.

The cause came on for trial before a jury, and verdict and judgment were for plaintiff in the sum of $826.60. The writ of error is from such judgment.

Metson, Drew & Mackenzie, E. H. Ryan, Ira D. Orton, and G. J. Lomen, for plaintiffs in error.

James W. Bell, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Evidence was adduced tending to show that plaintiff had acquired title to claim No. 1 Flat Creek; that Gold Belt Fraction overlapped it, but that the former was first duly located; that the Marshes and Ashland mined upon the overlap, and extracted gold therefrom, the royalties on which amounted to the sum of $991.98, all of which was paid over to Dunham; that plaintiff notified the lessees that they were mining on his claim, also notified the defendants to the same purpose, thus showing knowledge on defendants' part that their lessees were working plaintiff's ground; that one clean-up of gold was mined, probably, before the Pioneer Mining Company purchased its interest, and before plaintiff notified the lessees that they were trespassing upon plaintiff's claim, but that the remaining clean-ups were all mined subsequent to notice to the defendants of such trespass. The jury evidently omitted the royalty on the first clean-up, amounting to $171.07, from their estimate, and gave a verdict for the remainder. It appears that Dunham paid over to the Pioneer Mining Company its full proportion of these royalties, reserving his own share.

It further appeared from plaintiff's admission that, at the time the gold was extracted by defendants' lessees, the plaintiff's claim was also under lease to another party from plaintiff. When, however, defendants' counsel offered the lease in evidence, it was not admitted, and an

exception was allowed. At the close of plaintiff's case, defendants moved for a nonsuit, and at the close of the entire evidence for an instructed verdict, both of which motions were denied. The principal assignments of error are based upon the court's ruling in refusing to admit the lease in evidence and in denying the motions for nonsuit and instructed verdict.

[1] The strong contention of counsel for plaintiffs in error is that the action is one of trespass quare clausum fregit, and, being such, the plaintiff must show actual or constructive possession, without which he cannot recover. If the action be technically such as is suggested, then it may well be conceded that counsel's conclusion should follow. Counsel for defendant in error contends, however, that the action is in the nature of a trespass de bonis asportatis, or trover, and is appropriate to recover the royalties that defendants received from the mine.

Under the Alaska statute, all forms of action are abolished. Section 1, c. 1, tit. 2, Civil Code of Procedure of Alaska, 1 Fed. St. Ann. 55. Under this procedure, it is simply necessary to state the facts out of which the cause of action arises. "And when," says the Supreme Court of Kansas, "the plaintiff has stated the facts of his case he will be entitled to recover thereon just what such facts will authorize." McGonigle v. Atchison, 33 Kan. 726, 736, 7 Pac. 550, 553. Continuing, the court further says:

"We now look to the substance of things, and not merely to forms and fictions. If the facts stated by the plaintiff would authorize a recovery under any of the old forms of action, he will still be entitled to recover, provided he proves the facts. If the facts stated would authorize one or two or more kinds of relief, he may then elect as to which kind of relief he will obtain; and the prayer of his petition will generally indicate his election."

That was a case where a party had dug sand upon the plaintiff's land in Missouri and carried it away into Kansas, and the question arose whether damages could be recovered in Kansas for the trespass and appropriation of the sand. It turned upon the point whether the action was local or transitory. If it was trespass quare clausum fregit, it was local, and could not be prosecuted in Kansas. If de bonis asportatis, or trover, it was transitory, and could be so prosecuted. The court determined the matter from the allegations of fact contained in the plaintiff's complaint. While it was thought the complaint stated facts sufficient to constitute a cause quare clausum fregit, it also stated facts entitling to recovery upon the other cause, of de bonis asportatis, or trover.

So in the present case we think the statement of facts quite sufficient to entitle the plaintiff to recover as for gold taken from the mine of plaintiff and converted to the use of defendants. The complaint alleges that defendants entered upon the mine and extracted the gold, and appropriated and converted the same to their own use, and prays damages. And why should not the plaintiff be entitled to recover? The defendants admit receiving the royalties, but are without knowledge as to whether the gold came from the Gold Belt Fraction or No. 1 Flat Creek. The royalties are such, presumably, as plaintiff would

have received from his own lessee, had the lessees of defendants not mined the ground first, and in justice and equity the royalties belong to plaintiff, and not to the defendants. Under this construction of the complaint, the lease offered in evidence, and rejected, was not material to the issues. So, also, was there no error in denying the nonsuit and the motion for an instructed verdict.

[2] Another contention is that defendants, in any event, are not jointly liable. The testimony tends to show that defendants persisted in requiring the Marshes and Ashland to continue their mining operations, notwithstanding they were abundantly notified that the lessees were mining on the plaintiff's ground, and there is no doubt that the defendants jointly received and appropriated the royalties. The proportion of the division of such royalties between them does not alter the relation. So it follows that they incurred a joint liability.

The judgment of the District Court should be affirmed, and it is so ordered.